Lois **CHADWICK, et al.,**

v.

**SHELL OIL COMPANY.**

Civ. A. No. 93–2163.

United States District Court,
E.D. Louisiana.

Aug. 18, 1993.

Daniel E. Becnel, Jr., Becnel, Landry & Becnel, Reserve, LA, Calvin Clifford Fayard, Jr., Fayard, Harris, Roethele & Honeycutt, Denham Springs, LA, William Hugh Sibley, Sibley & McShan, Greensburg, LA, for plaintiffs.

Scott Edward Delacroix, Adams & Reese, Charles M. Raymond, Shell Oil Co., New Orleans, LA, for defendant.

### ORDER AND REASONS

FELDMAN, District Judge.

The plaintiffs move to remand on the ground that the individual claims in this case do not exceed the jurisdictional amount of $50,000, and that aggregation of the punitive damages claims to create jurisdiction in this case would be improper. The Court agrees.

#### Background

This case involves the spill of sulfuric acid from a pipeline operated by Shell Oil Company at its Norco facility on June 8, 1993. This event resulted in the evacuation of the communities in the vicinity of the plant and

caused many, admittedly mostly minor, injuries. Although this controversy has not yet been certified as a class action, several motions are pending to consolidate the four other cases arising out of this incident and each complaint seeks a class certification composed of plaintiffs living in the Norco refinery area. The complaints do not plead a jurisdictional amount (which is permitted by Louisiana law).

It is the plaintiffs' contention that this Court lacks subject matter jurisdiction because the separate and distinct claims presented by the individual (and as yet, uncertified) class members cannot be aggregated to meet the jurisdictional amount and the individual claims for compensatory and exemplary damages by their own admission do not exceed $50,000. The defendant does not dispute the plaintiffs' candor about the value of their claims. Rather, Shell argues that the claims for punitive damages may be aggregated to create the needed jurisdictional amount to stay in federal court.

### I.

 It is basic that when a suit is not originally filed in federal court, but is later removed, federal jurisdiction is determined at the time of removal. *Federal Savings & Loan Ins. Corp. v. Griffin*, 935 F.2d 691, 696 (5 Cir.1991), *cert. denied sub nom, Griffin v. First Gibraltar Bank*, — U.S. ——, 112 S.Ct. 1163, 117 L.Ed.2d 410 (1992). It is equally academic that the removing party bears the burden of proving that federal jurisdiction exists. *See Atkins v. Harcros Chemicals, Inc.*, 761 F.Supp. 444, 445 (E.D.La.1991). As this Court has written previously, when the removed plaintiff has not pleaded with certainty a request for defined monetary damages, as in this case, "the defendant should be held to prove to a legal certainty that the plaintiff's claim equals or exceeds the requisite jurisdictional amount." *Saunders v. Rider*, 805 F.Supp. 17, 18 (E.D.La.1992) *citing St. Paul Mercury In-*

*demnity Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938). Moreover, the "mere assertions of the defendants as to their estimates of the value of the plaintiff's claim can not satisfy a legal certainty standard of proof [for] federal courts are courts of limited jurisdiction, and we must not casually assume the existence of jurisdiction." *Id.* at 19. The *Saunders* test would seem to apply with no less force in this setting, because we are indeed courts of limited jurisdiction.

 It is undisputed that the claims of the individual plaintiffs may not be aggregated for the purpose of defining the federal jurisdictional threshold. *See Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973).[1] There is, however, a limited exception to this otherwise cautious rule. The Supreme Court held long ago:

> When two or more plaintiffs, having separate and distinct demands, unite for convenience and economy in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount; but when several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest, it is enough if their interests collectively equal the jurisdictional amount.

*Troy Bank v. G.A. Whitehead & Co.*, 222 U.S. 39, 40–41, 32 S.Ct. 9, 9, 56 L.Ed. 81 (1911). The key to the puzzle has been to define in this context a claim of common and undivided interest. For at least one court, common and undivided interest means that it is "essential that these claims constitute in their totality an integrated right against the defendants." *Berman v. Narragansett Racing Assoc.*, 414 F.2d 311 (1 Cir.1969), *cert. denied*, 396 U.S. 1037, 90 S.Ct. 682, 24 L.Ed.2d 681 (1970). That the defendant has no interest in how the claim is distributed among the class members is a factor in whether the class has a common and undivid-

---

1. Although this case has not yet been determined to be a Rule 23(b) class action, both parties operate under the assumption that should it survive this motion to remand, such certification would be imminent. This Court therefore adopts this assumption for the purposes of this motion, but that is an assumption of convenience only. Whether it has merit is still another matter. *But see, Eagle v. American Telephone and Telegraph Co.*, 769 F.2d 541, 545 fn. 1 (9 Cir.1985), *cert. denied* 475 U.S. 1084, 106 S.Ct. 1465, 89 L.Ed.2d 721 (1986).

ed interest. *Id.* at 316. "If one plaintiff cannot or does not collect his share," another court has said, "the shares of the remaining plaintiffs are increased." *Sellers v. O'Connell,* 701 F.2d 575, 579 (6 Cir.1983). But simply deciding whether a claim can be characterized as common and undivided should not end the inquiry, if that claim nevertheless remains speculative in amount.

At least three courts have held that punitive damages can be aggregated. *See Lailhengue v. Mobil Oil Corporation,* 775 F.Supp. 908 (E.D.La.1991); *Martin v. Granite City Steel Corp.,* 596 F.Supp. 293 (S.D.Ill. 1984); and *In re "Dalkon Shield" IUD Products Liability Litigation,* 526 F.Supp. 887 (N.D.Cal.1981), *vacated on other grounds,* 693 F.2d 847 (9 Cir.1982). The court in *Dalkon Shield* observed:

> while no individual plaintiff had the right to an award of exemplary damages, all plaintiffs have a collective interest in the creation of a fund sufficient to punish and deter any alleged misconduct on the part of the defendant. Accordingly, the court must look to the amount of the potential fund, and not to the individual awards, for the determination of the amount in controversy.

*Dalkon Shield,* 526 F.Supp. at 911.

The applicability of the *Dalkon Shield* case, which is the doctrinal antecedent to the other two cases, to this case is limited by the fact that under California law one must plead a clear statement of damages sought. That case involved over 1,500 plaintiffs and claims for compensatory damages in excess of $500 million and punitive damages in excess of $2.3 billion. *Dalkon Shield,* 526 F.Supp. at 893. Significantly, then, the court in *Dalkon Shield* did not have to speculate as to the amount of punitive damages claimed and could make a finding to a legal certainty that punitive damages exceeded $50,000 when

aggregated. Louisiana, however, does not require an express statement of damages sought, and this Court does not have the benefit of knowing the asserted value of the claims for punitive damages. There is, then, nothing to aggregate at this point beyond guesswork. This Court believes that speculation about jurisdictional amount is an inappropriate exercise for a court of limited jurisdiction, particularly in light of the universally accepted legal certainty standard. *See Saunders v. Rider,* 805 F.Supp. at 19. This seems to have also been an influential factor in a district court decision that refused to aggregate punitive damages (and attorneys fees) under similar circumstances. *See Goldin v. American Airlines, Inc.,* 1990 WL 77630 (N.D.Ill.). In *Goldin* no specific amount of damages was requested.

 This Court cannot say that the aggregation of punitive damages claims is never appropriate. In fact, the *Dalkon Shield* case is a persuasive example in favor of such a principle. But Louisiana has chosen to mandate that the damages sought in litigation should not be specified.[2] As long as that view of pleading in Louisiana law remains the popular one, this Court will not engage in a speculative endeavor to create jurisdiction unless the defendant satisfies the test of *Saunders v. Rider, supra.* It has not done so.[3]

The plaintiffs' motion to remand is GRANTED.[4]

---

2. La.C.Civ.P. Art. 893.

3. The Court notes that *Lailhengue v. Mobil Oil Corporation,* 775 F.Supp. 908 (E.D.La.1991) did not put the defendant to the same proof as defined here, and reached a contrary result. Because the Court believes the defendant must meet the legal certainty standard as articulated in *St. Paul Mercury* and as refined in *Saunders,* especially if the plaintiff admits the claim is less than the jurisdictional amount (and no amount has been pleaded), this Court disagrees with *Lailhengue.*

4. By minute entry dated August 18, 1993, this Court consolidated this case with *Deion McGee v. Shell Oil Company,* C.A. 93–2162, *Alandra Anderson, et al. v. Shell Oil Co.,* C.A. 93–2235, and *Judy Anderson v. Shell Oil Co.,* 93–2164.