Robert W. **KINSEY**, Individually and on behalf of all others similarly situated, Plaintiff,

v.

**GENERAL MOTORS ACCEPTANCE CORPORATION**, Defendant.

Civ. No. 1208.

United States District Court, D. North Dakota, Northwestern Division.

June 6, 1973.

a diversity case, to the United States District Court.

Kinsey purchased a 1972 model automobile from a dealer in Crosby, North Dakota, on December 13, 1971, and signed a retail installment sales contract financing the unpaid balance of $2,831.-13 with a credit service charge thereon of $283.14 payable to GMAC. The complaint alleges that "[t]he Retail Installment Sales Contract executed by the plaintiff and defendant is in violation of Section 51–13–03 of the North Dakota Century Code, which provides that the maximum credit service charge as to motor vehicles that are designated by the manufacturer by a year model not earlier than the year in which the sale is made is $7.00 per $100.00. The credit service charge assessed by the defendant on the contract described herein was in the amount of $10.00 per $100.00." Kinsey brought this suit on his own right and as representative of a class comprised of all persons in North Dakota who have contracts with GMAC where the interest rate is in excess of "$7.00 per $100.00". He also demanded $1,000,000.00 in punitive damages.

GMAC moved for summary judgment, contending that Kinsey misconstrued N.D.C.C. § 51–13–03 which should be interpreted in terms of effective rates at which "$7.00 per $100.00" equals 12.68% per year. As such, an annual rate of 10% would be within permissible limits. The motion for summary judgment cannot be reached by this Court, as it appears the requisite jurisdictional amount required by 28 U.S.C. § 1332 is not present. The Court has raised the jurisdictional question on its own motion. In response, GMAC asserts the $10,000.00 jurisdictional amount is present on two grounds. First, that one or more unspecified members of the class Kinsey claims to represent have single contracts with GMAC, each of which exceed $10,-000.00. Since the complaint seeks to void these contracts as being unlawful, defendant contends there is an amount in excess of $10,000.00 in controversy as to each of these contracts. Secondly,

Robert W. Kinsey, Crosby, N. D., for plaintiff.

Walfrid B. Hankla, McGee, Hankla, Backes & Wheeler, Ltd., Minot, N. D., for defendant.

## ORDER OF REMAND

BENSON, Chief Judge.

This action arises out of a retail installment contract entered into between defendant and plaintiff. Plaintiff alleges the interest rate as charged by defendant is excessive, in violation of N.D.C.C. § 51–13–03. Plaintiff (Kinsey) is a resident of North Dakota, and defendant (GMAC) is a New York corporation, with its principal place of business in New York. The case was filed in state court and removed by the defendant, as

the complaint demands punitive damages of $1,000,000.00, and since the members of the class allegedly represented by Kinsey have a common undivided interest in any award of punitive damages, GMAC asserts under the rationale of Spears v. Robinson, 431 F.2d 1089 (8th Cir. 1970), their claims may be aggregated to meet the jurisdictional amount.

GMAC takes the position that the amount in controversy is determined solely by the pleadings, and the validity of the claim cannot be decided until after the Court assumes jurisdiction. Furthermore, GMAC contends the requisite jurisdictional amount is not a local question controlled by state laws or decisions, and therefore this Court cannot look to N.D.C.C. § 32–03–07 to determine the validity of the punitive damage claim before assuming jurisdiction.[1]

## DETERMINATION OF AMOUNT IN CONTROVERSY

■ Before considering the merits of the arguments advanced by GMAC, it is necessary to examine the matter of the jurisdictional requirement of "amount in controversy", and the limits in which this Court must direct its inquiry into the sufficiency of a claim in this respect.

28 U.S.C. § 1332 requires a jurisdictional amount of $10,000.00 in diversity cases. For jurisdiction to exist in the federal courts, the amount in controversy must exceed $10,000.00 exclusive of interest and costs.[2] Oikarinen v. Alexian Brothers, 342 F.2d 155 (3rd Cir. 1965).

■ In determining the jurisdictional question, the amount in controversy cannot be made dependent on the amount the plaintiff will recover. To do so would either entail a guess by this Court as to the final outcome, or would lead to wasteful or impermissible duplicate consideration of the merits. On the other hand, a party cannot create jurisdiction by asserting a frivolous claim.

> "The rule governing dismissal for want of jurisdiction in cases brought in federal courts is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938).

*See also:* Sanders v. Hiser, 479 F.2d 71 (8th Cir., filed May 2, 1973); Jeffries v. Silvercup Bakers, Inc., 434 F.2d 310 (7th Cir. 1970); Whitobsky v. Ford Motor Company, 409 F.2d 487 (5th Cir. 1969); Lind v. Canada Dry Corporation, 283 F. Supp. 861 (D.Minn.1968); 1 Barron & Holtzoff § 24, n. 50.1 (Wright Ed. 1970, and Cum.Supp.1972).

■ It is incumbent on the plaintiff to allege a claim that satisfies the requirement of the jurisdictional amount.[3]

---

1. N.D.C.C. § 32–03–07 provides:
   "In any action for the breach of an obligation not arising from contract, when the defendant has been guilty of oppression, fraud, or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example and by way of punishing the defendant."

2. The amount was increased in 1958 from $3,000 to $10,000 by a Congress concerned with congestion in federal courts, a Congress hopeful of reducing that congestion. U.S.Code Cong. & Admin.News, pp. 3099, 3101 (1958). However, because it is claimed there is little to prevent plaintiffs from increasing their demand for judgment to meet the new jurisdictional test, former Chief Justice Warren reported that although the increase "did result in a temporary reduction in the filing of private civil cases, the net effect on the workload has been very slight." Wright, Law of Federal Courts 107 (1970).

3. Rule 8(a)(1) requires that a pleading setting forth a claim for relief contain a short and plain statement of the grounds upon which the court's jurisdiction depends. The reason for the rule is evident as federal courts are courts of limited jurisdiction. There is no presumption of jurisdiction, and the basis for jurisdiction must be affirmatively shown. Bowman v. White, 388 F.2d 756 (4th Cir. 1968).

In this case, other than the prayer for punitive damages, Kinsey has made no allegation that the matter in controversy exceeds a sum of $10,000.00. GMAC, the removing party, is prepared to cure this part of the complaint by offering affidavits showing that one or more members of the class have contracts with GMAC over $10,000.00.[4] For the purpose of this opinion, the Court will assume GMAC has contracts with members of the subject class in excess of $10,000.00.

## AGGREGATION PRINCIPLE

The Aggregation Principle was recently stated and reaffirmed by the Supreme Court in Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969): "The traditional judicial interpretation under all of these statutes has been from the beginning that the separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement." at 335, 89 S.Ct. at 1056.

In *Snyder*, none of the members of the class met the jurisdictional amount requirement. Here we assume at least one class member would meet the jurisdictional requirement. Since "aggregation" as such is not necessary, may Kinsey, whose individual claim does not meet jurisdictional standards, remain as the plaintiff-representative in this case? This court believes that the holding in *Snyder* encompasses this situation as well and bars such "joinder": [5]

"When two or more plaintiffs, having separate and distinct demands, unite for convenience and economy in a single suit, *it is essential that the demand of each be of the requisite jurisdictional amount,*" quoting from Troy Bank v. Whitehead & Co., 222 U.S. 39, 40, 32 S.Ct. 9, 56 L.Ed. 81 (1911) (emphasis added), 394 U.S. 332, at 336, 89 S.Ct. 1053, 22 L.Ed.2d 319.

In Alvarez v. Pan American Life Insurance Company, 375 F.2d 992 (5th Cir.), cert. denied 389 U.S. 827, 88 S.Ct. 74, 19 L.Ed.2d 82 (1967), a class action was dismissed where the representative of the class did not meet the jurisdictional amount requirement of Section 1332, although a member of the class had a claim in excess of $10,000.00.

"Professor Moore has described the class action as nothing more than ' * * * a procedural device to permit some to prosecute or to defend an action without the necessity of all appearing as plaintiffs or defendants.' . . . This statement was made in support of his view that the aggregation principle was applicable in full force to class actions brought under old Rule 23. Aggregation was proper, he stated, where the claim was joint or common, as in the true category, but not where there were several or separate claims as in hybrid or spurious class suit. This treatise law is in line with the decisions. . . . [A] proceeding under Rule 23(a) [is] ' * * * in effect, but a congeries of separate suits so that each claimant must, as to his own claim, meet the jurisdictional requirements.' In Sturgeon v. Great Lakes Steel Corporation, 6 Cir., 1944, 143 F.2d 819, a spurious class action, the court pointed out that the class action rule does not broaden the

---

4. This is proper, "in light of the principle that the whole record may be looked to, for the purpose of curing a defective jurisdictional allegation." Wright, Federal Courts, 291 (West 2nd ed. 1970); Lonnquist v. J. C. Penney Company, 421 F.2d 597, 599 (10th Cir. 1970).

5. The majority in *Snyder* did not speak to the point, and it is related to the question of whether one party with an insufficient claim may join with another whose claim is in excess of $10,000. The dissenters in *Snyder* thought that the rule there announced would apply "in all cases where one or more of the co-plaintiffs has a claim of less than the jurisdictional amount . . . ." 394 U.S. at 343, 89 S.Ct. at 1060. The majority does cite, with seeming approval, 394 U.S. at 336, 89 S.Ct. 1053, the case of Clark v. Paul Gray, Inc., 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001 (1939), in which the fact that one plaintiff had a claim of sufficient size did not preclude dismissal with regard to other members of the class with smaller claims.

jurisdiction of the federal courts in diversity of citizenship cases, citing old Rule 82, F.R.Civ.P., which provided that the rules were not to be construed to extend or limit the jurisdiction of the District Court. . . .

In sum, it would appear that the principle of aggregation falls within the scope of jurisdiction which has been traditionally left to Congress rather than in the rule making powers delegated to the Supreme Court by Congress. It follows that the principle is valid and subsisting notwithstanding Rule 23. This conclusion is a recognized limitation on the full utility of the class action procedure in federal courts where some members of the class have claims in the jurisdictional amount and some do not. . . .

■ There is one last matter which should be mentioned. After appellee moved to dismiss the Alvarez case for lack of the jurisdictional amount, Mr. Alvarez called to the court's attention that another member of the class had a contract with appellee in the amount of $25,000. This suggestion is of no help to Mr. Alvarez or the class but it would enable this member of the class, just as was true in Clark v. Paul Gray, supra, to maintain his separate action, assuming the necessary amendment in the District Court. As we have noted, where, as here, the claims of the respective members of the class are several and distinct, each must establish the requisite amount for his action to lie." at 996, 997.

■ This decision has been followed in the Eighth Circuit, Snyder v. Harris, 390 F.2d 204 (8th Cir. 1968), aff'd 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969), and approved by the Supreme Court in Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969). *See also* City of Chicago v. General Motors Corporation, 467 F.2d 1262, 1264 n. 11 (7th Cir. 1972); City of Inglewood v. City of Los Angeles, 451 F.2d 948 (9th Cir. 1972); Almenares v. Wyman, 453 F.2d 1075, 1085, 1086 & n. 14 (2nd Cir. 1971). The above cases illus-trate that if the representative plaintiff cannot meet the jurisdictional requirement, the class action must be dismissed, unless he falls within a situation where aggregation is permissible.

## PUNITIVE DAMAGES

GMAC correctly asserts that the punitive damages claim of Kinsey is subject to aggregation to meet the jurisdictional amount requirement. "'Aggregation has been permitted only . . . in cases in which two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." *Snyder,* 394 U.S. at 335, 89 S.Ct. at 1056.

■ The defendant erroneously asserts that this Court cannot look past the pleadings to assess the validity of the punitive damages claim. The correct rule is found in Dixon v. Northwestern National Bank of Minneapolis, 276 F. Supp. 96 (D.Minn.1967):

"It is well settled that punitive damages may be added to actual damages to attain the jurisdictional minimum. (citations omitted). *But such punitive damages may not be added to actual damages when their recovery is impossible to a legal certainty under the applicable state law.* Bell v. Preferred Life Assur. Soc'y., 320 U.S. 238, 64 S.Ct. 5, 88 L.Ed. 15 (1943); Hedberg v. State Farm Mut. Automobile Ins. Co., 350 F.2d 924 (8th Cir. 1965); Ringsby Truck Lines Inc. v. Beardsley, 331 F.2d 14 (8th Cir. 1964). Since under the diversity grant this court applies the law of the state in which it sits, Minnesota law must be examined to determine whether punitive damages are recoverable." (emphasis added), at 103, 104.

■ On the basis of the pleadings and record before this Court, it is clear Kinsey's claim for punitive damages is deficient in two respects. Kinsey's claim that GMAC willfully and intentionally violated N.D.C.C. § 51–13–03 is a claim arising out of a contract between the two parties. Under the North Dakota law,

such a claim will not support a demand for punitive damages. Then, too, N.D. C.C. § 32–03–07 limits punitive damages to those situations where the defendant has been guilty of oppression, fraud, or malice. An allegation of an intentional or willful act is not an allegation of oppression, fraud or malice. It therefore appears to a legal certainty Kinsey cannot recover punitive damages in this case.

As this Court has no jurisdiction, the case is remanded to the state court, pursuant to Title 28 U.S.C. Section 1447(c), without costs. The removal bond is exonerated.